Filed 8/9/23  Zepeda v. Wonderful Citrus Packing CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| VICTOR ZEPEDA et al., Plaintiffs and Appellants, v. WONDERFUL CITRUS PACKING LLC, Defendant and Respondent. | F080661 (Super. Ct. No. S1500CV282439) **OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Kern County.  David R. Lampe, Judge.

The Downey Law Firm, Philip A. Downey; Rodriguez & Associates, Daniel Rodriguez, Noah J. Moss; Esner, Chang & Boyer, Esner, Chang, Boyer & Murphy, Andrew N. Chang and Kathleen J. Becket for Plaintiffs and Appellants.

Roll Law Group, Littler Mendelson, Brooke S. Hammond; Roll Law Group, Lisa A. Stilson and Kristina M. Diaz for Defendant and Respondent.

-ooOoo-

This case centers around a labor dispute between Victor Zepeda (Zepeda) and Ulises Torres (Torres) and their employer Wonderful Citrus Packing LLC (Wonderful). Based on the nature of the dispute, Zepeda seeks to serve as a representative aggrieved employee in a Private Attorney General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.) claim. Further, both Zepeda and Torres seek to serve as representatives in a class action against Wonderful.

The issues raised in this appeal arise from the trial court's decision not to certify the action for class action status and the trial court's determination that summary judgment should be entered against Zepeda and Torres on their individual claims.[1] In our opinion below, we find that the trial court did not abuse its discretion in denying the class certification request, with the exception of one proposed subset for which a change in the law requires additional consideration. In addition, we find the trial court failed to recognize material issues of fact with respect to all claims brought by Zepeda and Torres individually. In doing so, while this court finds that the trial court's grant of summary judgment on certain underlying theories can stand, the record submitted presents an issue of fact on at least one factual theory underlying each claim presented in the complaint. For the reasons set forth below, then, this court reverses both orders and remands for further proceedings.

Throughout this opinion this court refers to the assertions brought in the class action and PAGA claim, as well as the individual claims brought by Zepeda and Torres. Accordingly, where arguments are brought on behalf of a group of employees or this court is referring to arguments made by counsel that apply either to the larger proposed class groupings or to Zepeda and Torres as part of a larger group, this court will endeavor

---

[1] The operative third amended complaint (the complaint) originally included a third plaintiff, Alejandra Villegas. Wonderful sought and was granted summary judgment against Villegas, which Villegas did not oppose. There are no arguments made on appeal regarding Villegas's individual claims.

to refer to "appellants." When facts or issues are specific to Zepeda and Torres, each will generally be referred to by name.

## FACTUAL AND PROCEDURAL BACKGROUND

This case covers a broad scope of issues, each of which consists of an analysis of a substantial number of facts submitted across multiple, although partially overlapping, motions. In order to focus the analysis on the most relevant facts underlying the disputes presented by the parties, this court provides a general factual and procedural overview in the first instance with additional factual detail added in the discussion of the issues below.

Wonderful is in the business of growing, packing, and shipping fresh citrus. It operates out of Delano and employs thousands of employees. Relevant to this case, Wonderful's employees work in various capacities, including such positions as sorters, leads, forklift drivers, and mechanics, among many others, in what are known as its D1 and D2 facilities. These are large warehouse-type packing and shipping areas, with the size of the D2 facility estimated at nearly the size of 14 football fields.

Although practices vary, hourly employees generally gather in centralized locations prior to their shifts and then utilize time clocks in various locations to clock in for work. Some employees may need to walk substantial distances to reach their workstations, and many are required to utilize forms of personal protective equipment (PPE), wash their hands prior to working with the citrus, or both. Some categories of employees are provided with radios to assist with their work responsibilities.

In order to take their required breaks, employees may need to remove their PPE before the break and reapply the PPE and complete washing protocols before handling citrus again. Employees generally utilize designated break rooms during their rest breaks. With respect to meal breaks, some employees, particularly those directly hired by Wonderful, agreed as part of their hiring process to voluntarily waive their right to a first meal break on shifts less than six hours and voluntarily waive their right to a second meal

break on shifts less than 12 hours. The specific practices surrounding these and similar activities are the general issues of contention leading to the present lawsuit.

In the complaint, appellants sought class action certification and raised eight claims. Appellants alleged that Wonderful's policies and practices resulted in employees not being paid for all hours worked. Appellants specifically highlighted Wonderful's PPE practices as one cause of this failure, claiming appellants "spend substantial amounts of time, for which they are not compensated, waiting to receive [sanitary gear], donning their required [sanitary gear], waiting in line to wash hands and sanitize their [sanitary gear], walking to production lines, and performing other work activities," all prior to the start of paid time. Partially related to these requirements, appellants alleged that they were not provided proper 10-minute rest periods and 30-minute meal periods because Wonderful "continued to exercise control over" appellants during these breaks. Appellants additionally alleged employees were not permitted second meal periods on shifts longer than 10 hours. Appellants also alleged Wonderful utilized an improper time-rounding policy that failed to properly compensate employees for all hours worked.

Based on these general factual claims, appellants raised the following eight causes of action: (1) a failure to pay minimum wages based on Labor Code sections 510, 558, 1194, and 1198; (2) a failure to compensate for all hours worked based on Labor Code section 204; (3) a failure to pay overtime wages based on Labor Code sections 510 and 1194; (4) a failure to provide legally-compliant meal and rest breaks based on Labor Code sections 226.7 and 512; (5) statutory penalties for unpaid wages and waiting time based on Labor Code sections 201 through 203; (6) a failure to properly itemize pay stubs based on Labor Code section 226; (7) a violation of the unfair business practices law based on Business and Professions Code section 17200 et seq.; and (8) enforcement of California's PAGA law based on Labor Code section 2698 et seq. with Zepeda as the aggrieved employee.

The parties completed discovery before moving to motion practice. Appellants first filed a motion for class certification alleging a core class consisting of all "former and current nonexempt hourly production employees" who "worked at D1 and D2 facilities during the four-year period before the filing of this action through March 1, 2017," and identifying multiple subclasses based on the factual allegations detailed above.[2] Appellants submitted multiple documents, including declarations and an expert opinion, in support of the certification request. Wonderful opposed the request and the trial court ultimately entered an order denying class certification. For the purposes of analyzing the various denied classes, this court more fully discusses the order based on its analysis of each proposed class below. Ultimately, the trial court concluded that appellants "failed to establish by sufficient evidence that adjudication of the theory of liability advanced for the class and each proposed subclass is amenable to class treatment," although the trial court provided greater detail on each proposed class.

After the class certification motion was denied, Wonderful moved for summary judgment or summary adjudication against Zepeda and Torres individually. Wonderful submitted multiple documents and declarations, including portions of the class certification evidence, in support of its request. Appellants opposed the motions filed against them and attempted to submit additional evidence showing that material issues of fact existed. The trial court ultimately granted summary judgment against both Zepeda and Torres. A summary of the full order is provided when this court reaches its discussion of these motions below.

This appeal timely followed.

---

[2] One of the proposed subclasses involved employees who were "required to carry a radio during rest periods and meal periods." Appellants do not seek review of any issues under this proposed subclass on appeal.

## DISCUSSION

In an effort to focus this court's analysis across the multitude of arguments made by appellants to reverse both the class certification and the summary judgment rulings, this court will consider appellants' arguments across the two major motion types. Thus, this court will first consider whether the trial court correctly denied class certification and then whether the trial court correctly granted summary judgment across all claims.

### *The Order Denying Class Certification*

As noted above, the trial court denied appellants' request to certify a class action based on any of the proposed subclasses proffered by appellants. To facilitate this court's review, we first outline basic class certification principles and our standard of review. We then analyze each proposed class as considered by the trial court and argued by the parties on appeal. Our summary of the proposed class and the trial court's ruling regarding that class come from the trial court's order, and we, therefore, do not provide a separate summary of the order.

#### *Class Certification Principles*

Our Supreme Court has "articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)

With respect to whether common or individual interests predominate, the core dispute between the parties here, the relevant question is "whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so

numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) Courts look to the theory of recovery advanced by the proponents of certification, examining "the allegations of the complaint and supporting declarations" to determine "if the defendant's liability can be determined by facts common to all members of the class." (*Id.* at pp. 1021–1022.)

The inquiry is typically not "into the validity of the complaint's allegations; rather, resolution of disputes over the merits of a case generally must be postponed until after class certification has been decided." (*Brinker*, *supra*, 53 Cal.4th at p. 1023.) However, there are instances where " 'issues affecting the merits of a case may be enmeshed with class action requirements,' " and in those specific instances where "evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them." (*Id.* at pp. 1023–1024.)

Ultimately, the " 'decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion,' " meaning, a " 'certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1022.) The issue of predominance itself is a factual question reviewed for substantial evidence. (*Ibid*.) And in all instances, we presume the existence of all facts the trial court could reasonably deduce from the record. (*Ibid.*)

*Discussion*

Having set forth these principles, we next consider the specific classes that were denied by the trial court. These are generally referred to below as (1) the employees affected by time rounding, (2) the rest period premium pay subclass, (3) the late initial and no second meal period premium pay subclasses, and (4) the D2 catwalk time clock users. For each proposed class, this court will review the class definition and the trial

court's order, then analyze the trial court's decision in light of the arguments raised in the briefs. This court will also take up broader issues raised by appellants in its discussion of issues relating to the proposed classes.

### *The Employees Affected by Time-rounding Class*

#### The Class Definitions

The primary class proposed by appellants covered employees "who worked at D1 and D2 facilities during the four-year period before the filing of this action through March 1, 2017."

#### The Trial Court's Order

The trial court began its consideration of this proposed class by reviewing appellants' underlying legal theory. The trial court explained that appellants alleged Wonderful utilized an "unlawful policy" that rounded employees' compensable time to the nearest quarter of an hour. Thus, where an employee worked more than half of a quarter-hour block of time (e.g., eight mins.), Wonderful would round their time up to the nearest quarter-hour for compensation purposes. However, if the employee worked less than half of a quarter-hour block of time (e.g., seven mins.), Wonderful would round their time down to the nearest quarter-hour. Appellants provided expert evidence that the net result of this policy was an underpayment of approximately 30,000 hours spread across all employees. In contrast, Wonderful provided expert evidence showing that 46 percent of all employees were paid accurately or benefited from the policy and that any difference on a per-employee basis was de minimis. Wonderful also argued there were substantial individual reasons why an employee might not clock in at exactly the start or end times for their shifts.

Relying on *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 907 (*See's Candy*), the trial court concluded that a rounding policy was permissible if it "is fair and neutral on its face" and " 'is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time

8.

they have actually worked.' " Reviewing the evidence, the trial court concluded that while appellants' expert evidence identified a theory of liability, it was insufficient to demonstrate an improper policy on a class-wide basis. The trial court stated the analysis did not show "that the 'rounding' policy was <u>used</u> to underpay employees" and noted that any rounding policy "is always mathematically going to be out of balance in some direction." The trial court further found the evidence insufficient to show any "individual representative plaintiff has suffered due to rounding" or that Wonderful "unlawfully applied a facially neutral rounding policy." Finally, the trial court noted the need to effectively manage the case within a class action setting before stating appellants had "not offered any trial management plan to demonstrate how class treatment on the issue is achievable."

The trial court then offered a series of questions, reflecting its concerns about certification in this case. These questions were: "Do [appellants] plan to offer witnesses who can attest to a consistent practice of underpaying due to rounding? How do [appellants] intend to manage the issue that some employees within the class may have actually benefitted from the rounding policy whereby class adjudication might result in a windfall to them? Is this class adjudication to be accomplished by statistical or mathematical expert analysis alone? If so, how so? Will the evidence of unlawful underpayment take the form of a parade of disadvantaged witnesses? If so, what prevents [Wonderful] from offering its own parade of advantaged witnesses?"

Based on this analysis the trial court concluded "the motion falls short of demonstrating that the alleged unlawfulness of [Wonderful's] 'rounding' policy lends itself to adjudication by class treatment."

<u>Analysis</u>

Appellants' arguments on appeal with respect to this issue focus heavily on our Supreme Court's recent ruling in *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 68 (*Donohue*), which held both that the "practice of rounding time punches for meal

9.

periods is inconsistent with the purpose of the Labor Code provisions and the [Industrial Welfare Commission] wage order" and that there is a rebuttable presumption that time records that fail to show a proper meal break create a rebuttable presumption that one was not provided. (*Id.* at pp. 75–76 [adopting conc. opn. of Werdegar, J. in *Brinker*, *supra*, 53 Cal.4th at pp. 1052–1055].) Notably, the trial court in this case issued its order denying class certification roughly three years earlier, in 2018. Wonderful contends the trial court's order was correct under the arguments presented to it, which did not focus on meal breaks, and that appellants' arguments on appeal should be rejected because they were not raised below and are unsupported regardless. We therefore start with the general rounding issue before turning to the effect of the *Donohue* decision on this case.

*Class Certification Under* See's Candy

In *See's Candy*, our sister court in the Fourth District provided a detailed discussion on the legal standards for evaluating a rounding claim that has become the guiding case in this space.[3] Although focused on a rounding policy's effect on overtime pay, the standard set forth in *See's Candy* is that an employer may use a rounding policy[4] "if the rounding policy is fair and neutral on its face and 'it is used in a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' " (*See's Candy*, *supra*, 210 Cal.App.4th at p. 907.)

---

[3] In *Donohue*, our Supreme Court recognized that the standard set forth in *See's Candy* has been utilized by multiple state and federal courts. (*Donohue*, *supra*, 11 Cal.5th at p. 72.) Because the issue in *Donohue* focused only on rounding the context of meal breaks, our Supreme Court did not undertake to review *See's Candy*. Rather, our Supreme Court expressly noted it had not decided the validity of the standard articulated in *See's Candy* before finding that rounding of meal break times would not be facially neutral even under that standard. (*Donahue*, at pp. 72–73.) This court has not been asked to reconsider *See's Candy* in light of *Donohue* and sees no reason to do so outside of the context of rounding of meal breaks.

[4] In *See's Candy* it was a "nearest-tenth" rounding policy, but the general structure has been applied equally to quarter-hour rounding. (See *AHMC Healthcare, Inc. v. Superior Court* (2018) 24 Cal.App.5th 1014, 1016 (*AHMC Healthcare*) [system used quarter-hour up and down rounding].)

In seeking class certification under this standard, appellants argued that the policy was illegal based on its consistent net benefit to Wonderful. More specifically, appellants stated the rounding policy was one that paid employees "for a whole quarter[-]hour interval when they work[ed] a major fraction of a quarter," but that between 2010 and 2017 this policy shorted employees across the company a total of roughly 30,000 hours, with no year showing a benefit to employees. On appeal, appellants make this same argument and additionally contend the trial court erred by focusing on evidence submitted by Wonderful that showed 46 percent of all shifts were paid appropriately under the policy, 33 percent of employees benefited under the policy, and any individual impact was minimal.

While appellants argue the trial court improperly weighed the evidence in rejecting their request for class certification, the trial court's analysis does not support this assertion. The key passage from the trial court's analysis noted that there is mathematical evidence of underpayment but held this alone is insufficient for class certification. As the trial court wrote: "A lawful rounding policy, unless miraculously perfect, is always mathematically going to be out of balance in some direction. No evidence is offered that any individual representative plaintiff has suffered due to rounding. [Appellants] have not offered evidence that there was a generalized policy or practice that unlawfully applied a facially neutral rounding policy. [Appellants] have not demonstrated how they plan to prove the allegation of an unlawful policy on a class[-]wide basis." The trial court's analysis makes clear that its rejection of the class certification request arose because the rounding policy implemented was undisputedly facially neutral and the evidence submitted did not indicate that policy was used to avoid compensating employees appropriately, but rather, only that some underpayment over time had occurred.

We see no abuse of discretion with respect to the issue as framed by the trial court. Appellants' first argument, that the trial court "applied the wrong law by dismissing the

11.

unpaid time as de minimis" (italics omitted), is not supported by the trial court's actual order. The only point at which the trial court referenced such a concept was in recounting the evidence presented by Wonderful's expert. The trial court's actual analysis did not delve into the damages aspects of the case, but rather into the facts offered to support the underlying theory of liability, that Wonderful utilized an allegedly improper rounding policy.

Appellants' second argument contends the trial court improperly ignored evidence showing an illegal application of an otherwise facially neutral rounding policy. With respect to those facts, the trial court's recognition that a neutral system will always be out of balance in some manner implies the trial court determined that the evidence showing some amount of underpayment occurred across a percentage of class members was insufficient to demonstrate an otherwise neutral rounding policy was being used in a manner that failed to compensate employees for all time worked. The trial court's analysis on this point comports with the law as applied in the summary judgment context for such claims. (See *AHMC Healthcare*, *supra*, 24 Cal.App.5th at p. 1024 [fact that small majority of employees were undercompensated was not sufficient to create an issue of fact whether an otherwise neutral policy was improper].)

Further, we do not see this as an improper weighing of facts in favor of Wonderful. While a court must resolve factual disputes upon which certification depends, that is not what the trial court did here. (See *Brinker*, *supra*, 53 Cal.4th at p. 1025.) Here, the trial court's analysis shows that it found the general evidence that a facially neutral rounding policy slightly underpaid some employees to be legally insufficient as proof on the core question of whether some policy or practice employed by Wonderful caused that facially neutral policy to underpay employees for total time worked. As explained in *See's Candy*, the use of a facially neutral rounding policy is acceptable provided it is not used to underpay employees. (*See's Candy*, *supra*, 210 Cal.App.4th at p. 907.) It is, as the trial court noted, expected that any facially

12.

neutral rounding policy can be slightly out of balance in one direction or another. Thus, where a facially neutral rounding policy is used that results in underpayment, more than a slightly unbalanced result is needed; evidence must show that the policy was used in a manner designed to effectuate that unbalanced result, such as the example of lower-paid employees being disproportionately affected as outlined in *AHMC Healthcare*. (*AHMC Healthcare*, *supra*, 24 Cal.App.5th at pp. 1027–1028.)

To identify whether common or individual questions would predominate in such a situation, the trial court then properly looked to how such a claim might be proven. Through the questions posited by the trial court about potential testimony from employees that were harmed by the policy being pitted against those that benefitted, and how those types of issue would be managed, the trial court acted within its discretion in determining that the evidence offered was insufficient to show common issues regarding the implementation of the rounding policy would predominate over individual issues concerning proper payment under that system. It therefore did not err in denying class certification on the overall time-rounding policy issue.

*Class Certification under* Donohue

As noted, however, well after the trial court's ruling, our Supreme Court provided additional guidance regarding the nature of rounding policies that affect break periods, which are required by law to meet certain length requirements. The two core holdings in *Donohue* are that, as to meal break time, a "rounding policy is not neutral," in part because it "never provides employees with premium pay when such pay is not owed, but it does not always trigger premium pay when such pay is owed," and that "time records showing noncompliant meal periods raise a rebuttable presumption of meal period violations." (*Donohue*, *supra*, 11 Cal.5th at pp. 73–74.) On appeal, appellants contend they satisfied the requirements for certifying a class with respect to meal break rounding violations based on the evidence presented that a rounding policy was implemented and that underpayment generally occurred. Wonderful responds that such a claim cannot be

13.

raised on appeal because it was not pursued below and that, regardless, the evidence does not support certifying the class.

We begin with whether, in light of *Donohue*, the trial court's order denying class certification can stand in the context of meal break rounding claims. We conclude that it cannot. "In exercising discretion, the trial court is required to make a reasoned judgment which complies with applicable legal principles and policies." (*In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561.) An " 'order based upon improper criteria or incorrect [legal] assumptions calls for reversal " 'even through there may be substantial evidence to support the court's order.' " ' " (*Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 968.)

As discussed above, the trial court's order denying class certification turned on a conclusion that because the rounding policy was legal and facially neutral, additional evidence would be required to demonstrate a company-wide policy of improper application. Upon review of the evidence submitted and arguments made, the trial court determined that appellants had not demonstrated such class-wide issues of proof were available.[5] *Donohue*, however, undercuts that analysis by determining, as a matter of law, that a rounding policy applied to meal breaks is not facially neutral.

*Donohue* demonstrates that the trial court's order in this context is based on an incorrect legal assumption. Further, the trial court's concern that individual evidence will be required to prove improper application of the policy is no longer supported by

---

[5] Appellants argue that the trial court improperly required them to submit a trial management plan to obtain class certification. We do not agree. The trial court's order turned on the fact that no evidence showed how a class-wide litigation would proceed in light of the facially neutral rounding policy being employed. While the trial court stated a trial plan had not been submitted, it specifically noted that "the law does not require a formal document entitled 'Trial Management Plan' " before explaining its view that appellants had not met their burden of showing how a class-wide action would proceed. We find no basis to conclude from these statements that the trial court's order was based on the alleged failure to file a trial plan, as opposed to its overall recognition that the evidence submitted did not lend itself to class-wide litigation.

14.

substantial evidence given the existence of a policy that is not fair and neutral on its face. (*Donohue*, *supra*, 11 Cal.5th at p. 72 ["But even assuming the validity of *See's Candy* [ ], a rounding policy in the meal period context does not comport with its neutrality standard."]; *See's Candy*, *supra*, 210 Cal.App.4th at p. 908 ["we have concluded that the rule in California is that an employer is entitled to use the nearest-tenth rounding policy if the rounding policy is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked' "].)

Wonderful further argues that certification could not be had, regardless, because appellants "cite no expert evidence to show any purported impact on the class or unpaid premiums owed as result of meal break rounding." This argument falls short in the context of class certification. As an initial matter, the expert evidence submitted by appellants, although not focused on meal break issues, is not wholly irrelevant either. In the context of a facially improper rounding policy, the evidence, derived from a review of actual time punch figures, shows that in each year between 2010 and 2017,[6] the rounding policy implemented, which was the same used to round meal breaks, underpaid employees as a whole. *Donohue* confirms that at the class certification stage, "records showing short and delayed meal periods" as well as missed meal periods, create a rebuttable presumption that there was a meal period violation. (*Donohue*, *supra*, 11 Cal.5th at pp. 74, 76.)

In light of the guidance in *Donohue*, the evidence submitted, and the attendant presumption of a violation, the trial court's determination that individual issues would predominate over class-wide issues on such a claim is no longer supported. Wonderful contends, though, that reversal is not warranted because the issue has been forfeited in

---

**6** Although not specifically relevant to resolving this issue, it appears Wonderful ceased utilizing rounding for meal break periods in March 2017.

light of the arguments raised to the trial court. We do not agree. As Wonderful notes, the general rule holds that a court will not reverse a judgment on grounds that were not specifically raised below. (See *American Indian Health & Services Corp. v. Kent* (2018) 24 Cal.App.5th 772, 789 [explaining rule but allowing argument to proceed based on exception].) "There is an exception, however, in cases where a new point of law is decided after the trial [citation] or where the new theory 'presents a question of law to be applied to undisputed facts in the record.' " (*In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227, fn. omitted.)

In this case, appellants raised a claim that class issues predominated because the rounding policy was, under the then-existing framework, facially neutral but implemented improperly. While the case proceeded, the legal framework changed such that rounding policies as applied to meal breaks are not considered facially neutral as a matter of law. The facts underlying appellants' arguments have not changed and there has been an intervening change in the law that created an argument that would have previously been rejected by the trial court. Further, the trial court's analysis weighed the likely common issues of proof against the likely individual issues of proof that arise when a facially neutral rounding policy is alleged to be improperly utilized to underpay employees. That balancing could very well change if the initial predicate fact, that the rounding policy is facially neutral and thus proper, no longer stands.

Based on these facts, this court chooses to exercise its discretion to consider the meal break specific issue, even though it was only raised below as part of a general argument, that the rounding policy used by Wonderful was improper. This court's opinion does not resolve whether class certification is proper under the meal break rounding claim. Such a conclusion requires balancing the nature of appellants' claims, including whether the offense is merely underpayment of time worked or remains a claim that broader policies failed to provide a legally required break, with the presumptions that improper rounding policies create and the evidence available regarding whether the

16.

policy was being used to hide shortened meal breaks. As with the other claims discussed in this opinion, whether individual issues predominate still turns on the nature of those arguments. This court concludes, therefore, that the trial court should consider those arguments, weigh any certification specific conflicting evidence, and determine whether the core issues are subject to individual or class-wide proof in the first instance.

### *The Rest Period Premium Pay Subclass*

#### The Class Definitions

The rest period premium pay subclass was proposed to cover employees "who worked at D1 and D2 facilities and [were] not permitted to take a rest period and [were] not paid a rest period premium for that day during the four-year period before the filing of this action through March 1, 2017."

#### The Trial Court's Order

The trial court described appellants' burden to be demonstrating "by admissible evidence that there was some unlawful policy or practice consistently applied to class members to deny lawful rest breaks which would trigger rest break premiums." Looking at appellants' legal theory for liability, the trial court found the core allegation was that Wonderful's policy required employees to remain on company premises and thus illegally failed to free them from employer control. The trial court found this argument to be legally incorrect, however, noting that the correct test was not whether employees must remain in a designated area, but whether they were truly relieved of all duties during the rest period. The trial court noted that limiting the areas an employee could travel could be unduly restrictive in small business settings, but that similar restrictions were not inherently illegal where the employer operated a "vast enterprise on many acres, with busy production areas." Relying on *Agustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269–270 (*Agustus*), the trial court concluded that a large operator such as Wonderful did not violate the law by requiring employees to remain on company premises and within designated break areas during their required rest periods.

17.

<u>Analysis</u>

Appellants challenge the trial court's ruling on several grounds. They contend that the trial court incorrectly described the basis for class liability, that it had no basis to credit evidence submitted by Wonderful regarding its rest break policies, and that the trial court wrongly understood and applied *Agustus*. We do not agree.

We begin with appellants' argument that the trial court wrongly identified the allegations supporting class certification. Appellants claim the trial court incorrectly limited their position to whether employees had been wrongfully denied a rest break when appellants' position also included a claim that Wonderful had a class-wide policy of "not paying rest break premiums when workers were not offered legally compliant rest breaks."

The trial court's analysis on this proposed class focused on the requirement there be "a well-defined community of interest" for the proposed class such that there are "predominant common questions of law or fact." (See *Brinker*, *supra*, 53 Cal.4th at p. 1021.) The required analysis compares those issues that are common to the class with those that require individual analysis in the course of determining liability and asks whether the theory of recovery is likely to prove amenable to class treatment. (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28 (*Duran*).)

While appellants focus on the trial court's discussion of their assertion that rest breaks were not provided as evidence the trial court failed to consider the full scope of their argument that payments were not made for missed rest breaks, their claim is not supported by the record. The trial court explained at the outset of its discussion that appellants needed to demonstrate "by admissible evidence that there was some unlawful policy or practice consistently applied to class members to deny lawful rest breaks which would trigger rest break premiums." In considering whether common issues predominate, a class that focuses upon a claim that premium pay payments were not made cannot stand without a demonstration of common issues underlying the duty to

18.

make the payments. This is inherent in the fact that no premium pay could be owed unless an employee was not provided with a required break.

Unlike assertions relating to damages, which can include manageable amounts of individual claims, assertions of liability require core common factual or legal issues to support class certification. (See *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326, 334 (*Sav-On*) [general question asks whether issues which may be jointly tried are so numerous or substantial that a class action is advantageous while noting that individual issues do not render class certification inappropriate so long as such issues may effectively be managed].) The trial court's statement recognizes that to claim a common factual issue for lack of payment, appellants would need to demonstrate some common thread of liability for those payments in the first place. A host of individual explanations for missed rest periods, not dependent upon a company-wide policy, would result in a series of mini trials to prove necessary facts for triggering the allegedly common policy of not paying for such claims. Thus, while a general policy not to make premium pay payments for missed rest breaks could be a common issue supporting class certification, the trial court's recognition that more would be required to demonstrate that common issues predominated does not demonstrate the trial court misunderstood appellants' basis for seeking class certification.

Appellants further argue that the trial court could not accept Wonderful's evidence regarding its pay and break policies. Appellants argue the trial court accepted unsupported evidence that Wonderful had a policy requiring employees to report any failures to provide a rest break, ignored evidence from prospective class members that they were not always given rest breaks, and failed to consider that there was no evidence showing a viable rest break policy in place at Wonderful and affirmative evidence that Wonderful itself had accepted responsibility for identifying missed rest breaks. We do not agree.

19.

Looking first at the trial court's order, the trial court found, at the outset of its order, that there was credible evidence "that there was a lawful rest break policy and practice." Contrary to appellants arguments, nothing in the trial court's statement or its analysis suggests its conclusion turned on a finding that employees were affirmatively required to report missed break periods, a failure to recognize that employees may have missed rest breaks for various reasons, or a failure to recognize Wonderful may have affirmatively sought to identify and pay rest break premiums when owed. Rather, the trial court's conclusion was that in reviewing the evidence it found credible Wonderful's claim that there was a lawful rest break policy and practice.[7]

However, even if appellants' arguments were firmly grounded in the record, they would not demonstrate error in this case. The trial court's ruling in this case focused upon whether individual questions regarding liability would predominate in the action. This analysis "will often depend upon resolution of issues closely tied to the merits," which "can turn on the precise nature of the element and require resolution of disputed legal or factual issues affecting the merits." (*Brinker*, *supra*, 53 Cal.4th at p. 1024.) Where "certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them." (*Id.* at p. 1025.)

In this case, the parties presented a factual dispute that highlighted whether group or individual issues would predominate. Specifically, appellants argued that company-wide policies existed which resulted both in employees being denied legally required breaks and in Wonderful refusing to pay required penalties. In order to support these claims, appellants proffered evidence suggesting a lack of training in the space, that some employees missed rest breaks due to production or other issues, and that Wonderful could

---

[7]     Notably, the underlying motion submitted by appellants did not specifically raise or discuss a claim based on missed rest periods due to Wonderful's failure to relieve employees from or otherwise grant employees permission to take those breaks. Rather, the two grounds discussed in the motion were an alleged obligation to carry a radio and an alleged restriction on where breaks could be taken.

not show it had paid penalties for missed rest breaks. In opposition, Wonderful presented evidence that it hired employees specifically to provide required rest breaks and that it had written policies that allowed for legally required rest breaks to be taken. As noted above, the trial court concluded that there was credible evidence of a lawful rest break policy and practice.

We find no error in the trial court's purported resolution of this dispute. There was a clear evidentiary conflict between the inferential evidence appellants provided that implied rest breaks were missed and not accounted for on a company-wide basis and the inferential evidence from Wonderful that its practice of hiring individuals specifically to provide rest breaks meant individual circumstances would determine why any specific break was missed. Upon review, substantial evidence supports the trial court's resolution of this dispute through its determination that there was a lawful rest break policy in place.

Finally, appellants argue that the trial court failed to follow *Agustus*, *supra*, 2 Cal.5th 257, which appellants contend holds that a rest break is legally considered "on-duty" if the employer's policy prohibits leaving the work premises. Appellants contend that Wonderful's policy of requiring employees to take their breaks in provided breakrooms was a second basis for demonstrating a class-wide failure to provide legally mandated breaks. As noted, the trial court found that it was "not unlawful for an employer to require that rest periods be conducted on its premises or that employees be restricted to certain employer designated areas" under *Agustus*. We agree with the trial court.

In *Agustus*, our Supreme Court resolved two related questions applicable to both rest and meal breaks. First, whether employers must allow for off-duty rest periods and, second, whether employers may require employees to remain "on call" during breaks. (*Agustus*, *supra*, 2 Cal.5th at p. 260.) The court clearly concluded that "employers must relieve their employees of all duties and relinquish any control over how employees spend their break time." (*Ibid.*) In its discussion of "off-duty rest periods" the court

focused on whether the language of the relevant wage orders permitted an employer to impose any type of work on the employee during the mandated break, concluding that such a reading was not tenable given the history and language of the relevant order. (*Id.* at pp. 264–269.)

Our Supreme Court's discussion, however, made no mention of where such a break must occur. Rather, in discussing whether rest periods may be "on-call," the court noted that "employees must not only be relieved of work duties, but also be freed from employer control over how they spend their time." (*Agustus*, *supra*, 2 Cal.5th at p. 270.) In explaining this aspect of the break requirement, the court wrote that because "rest periods are 10 minutes in length …, they impose practical limitations on an employee's movement. That is, during a rest period an employee generally can travel at most five minutes from a work post before returning to make it back on time. Thus, one would expect that employees will ordinarily have to remain on site or nearby. This constraint, which is of course common to all rest periods, is not sufficient to establish employer control." (*Ibid.*) The court then contrasted such minimal restrictions with the case before it, where the relevant policy "required plaintiffs to keep radios and pagers on, remain vigilant, and respond if the need arose." (*Ibid.*) The court found such restrictions to be improper.

A fair reading of *Agustus* comports with the trial court's understanding. While there may be some circumstances where limiting the location where an employee may take their rest break constitutes improper employer control, in circumstances involving large employers and larger work compounds, such restrictions are merely the practical implications of the workplace. In such circumstances, if the contested restriction is a practical necessity of providing a break area in an otherwise active work area, the theory of liability is untenable under *Agustus*. As the trial court found, that is the case here. Wonderful is a large employer with substantially large facilities. As noted above, it provided its employees with break periods. Even accepting that it required those breaks

occur in designated areas of its facilities, such a restriction did not exceed the practical necessities of the workspace and did not rise to the concern of on-duty work discussed in *Agustus*. Accordingly, we find no error in the trial court's denial of this proposed class certification.

### *The Late Initial and No Second Meal Period Premium Pay Subclasses*

#### The Class Definitions

The late initial meal period premium pay subclass was proposed to cover employees "who worked at D1 and D2 facilities and worked more than 6 hours and took a meal period after the 5th hour of work and [were] not paid a meal period premium for that day during the four-year period before the filing of this action through December 31, 2015."

The no second meal period premium pay subclass was proposed to cover employees "who worked at D1 and D2 facilities and worked for more than 12 hours and did not take a second meal period and [were] not paid a meal period premium for that day during the four-year period before the filing of this action through December 31, 2015."

#### The Trial Court's Order

The trial court considered these two proposed subclasses together. In denying certification of the proposed classes the trial court focused on the evidence presented regarding Wonderful's meal policies. Reciting appellants' evidence, the trial court noted Wonderful's "employee handbooks" appeared "to misstate applicable law regarding meal period requirements" and that appellants submitted anecdotal evidence in the form of declarations regarding missed meal periods. Appellants also submitted an expert declaration stating that "the number of paid meal period premiums was grossly disproportionate to [the] calculated number of missed or late meal periods."

Next, considering Wonderful's evidence, the trial court noted declarations affirmed Wonderful "had a valid meal period policy" and an expert declaration stating "the overall compliance rate for first meal periods is 72 [percent], [and] the majority of

23.

late first meal periods occur within 30 minutes of the first 5 hours." Wonderful argued these statistics show individual issues predominate because "recourse to individual records and employees would be necessary to determine why there was a late or missing meal period" and "why employees who were expected to finish their shifts within 12 hours did not do so."

Weighing these evidentiary submissions, the trial court found that appellants had "not carried their burden of demonstrating that a uniform corporate policy denying employees the opportunity to take meal breaks could be proven on a class[-]wide basis." The trial court found the evidence arising from Wonderful's employee handbooks was "successfully contradicted" by Wonderful's declarations that the policy as implemented was correct, leaving only individualized circumstantial evidence to support the claim. The trial court also found appellants' expert evidence was generally dispelled by Wonderful's expert evidence. The trial court concluded that, rather "than demonstrating the existence of a uniform unlawful policy of depriving employee[s] of their meal breaks …, the evidence before the Court presents numerous possibilities as to why certain employees may have had a late or missed meal break[ ]." The trial court then noted the lack of a trial management plan that demonstrates how appellants would present evidence on a class-wide basis or establish liability for the class.

Analysis

Although the trial court considered and resolved both the proposed late initial meal period and no second meal period premium pay subclasses together, appellants argue them separately based in part on unique evidence related to each. Although the underlying positions are similar across both class types, because the evidence and legal basis underlying the claims changes slightly depending on the nature of the alleged violation, we consider both classes separately and note where general arguments overlap.

*Overview of Meal Period Requirements*

Labor Code section 512, subdivision (a) defines the general requirements for meal periods in most industries: "An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived." (Lab. Code, § 512, subd. (a).) As explained in *Brinker*, the statute "requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work." (*Brinker*, *supra*, 53 Cal.4th at p. 1041.)

An employer provides the required meal period "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." (*Brinker*, *supra*, 53 Cal.4th at p. 1040.) The employer does not, however, have to then ensure that the employees actually takes the offered break. Rather, "[b]ona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay." (*Id*. at pp. 1040–1041.)

In addition, employers and employees can enter into specific agreements to waive one of the required meal breaks. (Lab. Code, § 512, subd. (a).) This formal type of waiver is different from an employee merely not taking advantage a provided break. In the later scenario, where no formal waiver exists, " 'if "a meal period is not taken by the

employee, the burden is on the employer to show that the … employee had been advised of his or her legal right to take a meal period and has knowingly and voluntarily decided not to take the meal period." ' " (*Donohue*, *supra*, 11 Cal.5th at p. 74.) Employees cannot unilaterally waive their employer's obligation to provide a meal period. (*Id.* at p. 75.) Accordingly, it is now settled that "time records showing noncompliant meal periods raise a rebuttable presumption of meal period violations." (*Id.* at p. 61.) "[T]he presumption applies to records showing short and delayed meal periods as well. Providing employees with short or delayed meal periods is just as much a violation of the meal period provisions as failing to provide employees with a meal period at all." (*Id.* at p. 76.)

*Late Initial Meal Period Subclass*

As noted, appellants' first proposed class covered all employees who worked more than six hours, took a meal period after the fifth hour of work, and were not paid a meal period premium for that day. In arguments that cover both proposed meal break classes, appellants argue the trial court made factual and legal errors that are "most evident in [the trial court's] mistaken belief that first meal breaks need not be offered within five hours of commencing work," "that non waivable second 30-minute meal breaks can in fact be waived if a worker worked no more than 12.5 hours," and "that meal breaks starting within 30 minutes of 5 or 10 hours," "or shift ending between 12 and 12.5 hours is indicative of individual issues predominating."

To support these positions, appellants first point to what they contend is a total of nearly 400,000 apparent meal break violations in the relevant time frame and contrast that with the claim that only roughly 860 meal break premium payments were made. This is then further contrasted with evidence that in the two years after the class action period ended, the "ratio of premiums paid vs. apparent violations jumped from near zero … to 82.6[ percent]." (Boldface omitted.) Appellants continue by pointing out purported flaws in the expert evidence submitted by Wonderful, specifically contending it includes

meal break data from outside of the class period alleged and thus is unreliable. Finally, appellants point to what they call "overwhelming evidence" demonstrating that employees class wide could not take breaks without permission, which appellants argue shows that individual issues cannot predominate.

In the context of late five-hour meal breaks specifically, appellants point to what they contend are facially illegal written meal break policies and an e-mail from a Wonderful employee purportedly confirming that meal breaks were not offered within five hours as additional evidence supporting their assertion of core common factual issues across the class. The written policy at issue states that after "a work period of not more than five hours, each employee will be permitted to take a 30-minute duty-free meal period unless the total workday can be completed within six hours." And the e-mail cited by appellants states that penalties "for lunches after the fifth hour" are "only for those unable to take or cut short" their breaks.

In response, Wonderful denies these facts show facially illegal policies and claims it "maintained a lawful meal break policy to offer timely first meal periods." Wonderful contends the written policy only details the shift length that triggers a first meal period, not when that period is to be taken, and contends none of the evidence offered shows a company-wide policy to provide meal breaks after the fifth hour of work. Wonderful then contends that because a proper policy was in place, an individualized inquiry would be required to determine why breaks were not timely taken since "evidence of a late or unrecorded meal period does not establish a violation of California law," and there are multiple legitimate reasons why a break may not have been recorded. It then argues that the expert testimony does not show an abuse of discretion in the trial court's ruling, in part, because the failure to pay a meal period penalty does not demonstrate that one was owed in the first instance.

The trial court's order shows that it considered the issue of common versus individual issues in the context of whether a company-wide policy existed to prevent

27.

employees from taking their first break within five hours of the start of their shift. In this context, the factual dispute argued by the parties here shows the trial court was faced with conflicting evidence on this point. Appellants were able to show that some employees were taking their breaks within the first six, not five, hours and found evidence in the form of vague employee policies that supported an inference Wonderful intended to offer first breaks within shifts up to six hours in length. Wonderful countered with evidence that employee groups took breaks in different ways, with some being responsible for their own timing and others being relieved, and with evidence that its policies complied with the law despite any ambiguities in the employee manuals.

As with the rest period premium pay subclass, the record evidence demonstrated a legitimate factual conflict regarding whether Wonderful was implementing a company-wide policy to deny timely first meal breaks. As noted above, where "certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them." (*Brinker*, *supra*, 53 Cal.4th at p. 1025.) Upon review, we see no abuse of discretion in the trial court's recognition of the factual dispute nor in its resolution of the disputed facts. Appellants' arguments regarding the expert evidence presented to the trial court generally focus upon the weight appellants contend should be given to that evidence and not its initial admissibility.[8] In light of those arguments, we find no fault in the trial court's weighing of the evidence in the first instance. (See *Sav-On*, *supra*,

---

[8] In a separate section, appellants argue any reliance on Wonderful's expert testimony was improper because it was inadmissible as a matter of law under a theory that it is methodologically unsound. We reject this claim. Appellants filed no objection to this evidence below and the trial court both heard and rejected their assertion that the evidence was not worth relying on because it included nonclass members. Regardless, appellants use this argument to suggest the trial court relied on a theory that granting meal breaks within a half-hour of the required time was proper. But it did no such thing. Rather, the trial court merely acknowledged that meal breaks close in time to the proper schedule could indicate individual issues regarding why those breaks were late.

34 Cal.4th at p. 338 [Court of Appeal erred to the extent it engaged in any reweighing of evidence].)

Further, as with the rest break period, the fact that premium payments were not regularly made does not demonstrate that common issues prevail. The class-wide issues raised by a lack of payments still turns on the reason why payments would be owed and the trial court's conclusion that the reasons why payments would be owed are generally predominated by individual issues is supported by the record.[9] Ultimately, across the entire proposed subclass, the trial court could and did find that individual issues regarding the reasons why class members took a first lunch break after the start of their fifth hour of work predominated over class-wide issues on the same point and therefore could conclude class certification was not proper.

*No Second Meal Period Premium Pay Subclass*

With respect to the proposed no second meal period premium pay subclass, the subclass was defined as all employees who worked for more than 12 hours, did not take a second meal period, and were not paid a meal period premium. Appellants supported their class proposal with the same general evidence of substantial purported meal break violations with minimal premium payments. In addition, appellants included additional arguments and evidence specifically related to the proposed no second meal period premium pay subclass.

This evidence alleged that Wonderful utilized facially illegal policies because its employee handbooks did not contain specific information on the right to a second meal

---

[9] This court notes that some arguments made by appellants indicate class-wide issues may exist in certain portions of the proposed class, such as those who required permission to take their breaks but did not take those breaks until after the fifth hour. However, there is no indication in the record as to the extent of these issues across the proposed class, and the record does not compel a finding that those issues predominate over the potential individual issues arising in remaining members of the proposed class. We take no position on the appropriateness of a class limited to employees who required permission or relief to take a timely meal break and did not receive one.

29.

break or premium pay if one was not provided. Appellants further pointed to evidence that between 50 and 66 percent of shifts between 2010 and 2015 that lasted longer than 12 hours did not show a second meal period was taken. And appellants pointed to the fact that less than .009 percent of purported violations resulted in a premium being paid to the employee. These broader statistics and facts were then bolstered by employee statements that those employees were unaware of their right to a premium payment or that supervisors were not trained to pay premium payments.

Wonderful responded with its own statements alleging that employees had been properly instructed to take second meal breaks prior to 10 hours on shifts extending over 12 hours and that any missed breaks on their part were due to oversights and not a failure to be offered a proper meal break. Wonderful also adduced evidence that forms provided to employees regarding formal waiver of meal breaks expressly stated that second meal breaks on shifts over 12 hours could not be waived.

Thus, as with the five-hour lunch break issue, the trial court was faced with competing evidence from the parties regarding whether Wonderful utilized a company-wide policy that did not provide employees with required meal breaks. As before, appellants sought to show such a policy existed based on employees failing to take their mandated breaks, Wonderful's failure to pay premiums for those breaks, and employee statements that they were either not informed of break policies or not provided proper break opportunities. And, as before, Wonderful responded with evidence showing that breaks were offered on a set schedule that it contended complied with the law and employee statements confirming that employees were informed of a proper break policy and were, in fact, offered those breaks.

Given these facts, we see no difference between the trial court's actions on the two types of meal break claims and therefore find no error. The trial court was provided with a core factual dispute regarding the basis for employees missing meal breaks. One explanation provided for a common set of issues that could be amenable to class

30.

certification while the other provided for a series of individual issues as to why employees missed each break. The trial court thus properly determined that resolution of this factual dispute was necessary to class certification and was within its discretion both to resolve that dispute and to credit Wonderful's evidence over appellants' evidence. (*Brinker*, *supra*, 53 Cal.4th at p. 1025.) We thus find no error.[10]

Appellants, however, raise an additional argument that relates only to second meal breaks on shifts over 12 hours. As appellants note, the governing law states that an employee may not legally waive a second meal break on shifts over 12 hours. (See *Gerard v. Orange Coast Memorial Medical Center* (2017) 9 Cal.App.5th 1204, 1210 [Labor Code "section 512[, subdivision ](a) [ ] allows such waivers only if the total hours worked is no more than 12 hours."].) Appellants contend that "this legal certainty should have ended the discussion" because "meal breaks on shifts over 12 hours, *may not be waived*." We do not agree.

Appellants' argument conflates waiver under Labor Code section 512 with the concept of voluntarily choosing to work through an offered break as explained in Justice Werdegar's concurring opinion in *Brinker*. (See *Brinker*, *supra*, 53 Cal.4th at pp. 1052–1055 (conc. opn. of Werdegar, J.).) Our Supreme Court recently clarified this distinction in *Donohue*, writing that the "term 'waiver,' as Justice Werdegar used it, should not be confused with the 'waived' meal period that Labor Code section 512, subdivision (a), authorizes only under limited circumstances. We understand an employee's 'waiver' in

---

**10** We again note that some groups within the no second meal period premium pay subclass appear to have highly common issues, such as employees that could not take a break unless relieved or who required permission to take a break but did not take a second meal break on a shift over 12 hours. However, the record sheds no light on what portion of the overall proposed subclass may fall into this category, and appellants have raised no argument that the subclass should be or could be culled on the record here. Given the variety of potential reasons why an employee may not have taken a second meal break across the entire subclass, as demonstrated by the evidence submitted, we conclude the trial court properly acted within its discretion in denying certification to the proposed no second meal period premium pay subclass.

31.

this context in the colloquial sense that the employee chose to work when he or she was not required." (*Donohue*, *supra*, 11 Cal.5th at p. 75.) In the context of meal break violations, Justice Werdegar's concurring opinion, which was adopted in *Donohue*, holds that a claim of voluntarily working through an offered break is an affirmative defense, not an element of the main claim, that must be proven by the defense. (See *Brinker*, at pp. 1052–1055 (conc. opn. of Werdegar, J.).)

In this case, appellants' evidence showing missed break periods was sufficient to show potential violations, and the trial court could have relied upon that evidence to grant class certification. This did not mean, however, that the trial court was required to grant certification. Wonderful was permitted, and did, provide evidence sufficient for the trial court to find that no common policy existed which failed to provide meal breaks to all subclass members and that, because of Wonderful's affirmative defense that employees missed meal breaks for multiple reasons, including willfully working through them, individual issues would predominate. The fact that employees "waived" some meal breaks was not determinative on the common issue dispute even given the language in Labor Code section 512 because the waiver prevented by that statute was different in nature than the affirmative defense of "waiver" that arose from employee's allegedly voluntarily working through offered breaks. Accordingly, the trial court did not error by failing to grant class certification due to the nonwaivable nature of second meal periods on shifts over 12 hours.

### The D2 Catwalk Time Clock Users Subclass

#### The Class Definition

The D2 catwalk time clock users subclass was proposed to cover "[a]ll former nonexempt hourly production employees of [Wonderful] … between September 1, 2012 and December 31, 2014 who worked in the Packing House D2 facility and [were] required to punch in and out for meal periods on time clocks located on the production floor and/or the intersection of the stairs and the catwalk."

According to the trial court, appellants' theory of liability for this class was a claim that "certain employees were deprived of a full 30 minutes of meal time … because they were required to use a remote time clock that required minutes of walking after clocking in and out before the actual break could begin." Wonderful opposed this subclass claiming there was "no sufficient record to determine who used a 'catwalk' time clock," no "uniform evidence of how any compensable time would be determined," and affirmative evidence that the contested time was not uniform among employees, insignificant in nature, and generally cured by a policy granting an extra five minutes of break time for potentially affected employees. The trial court rejected the proposed class on the ground it was "not persuaded that this purported liability is subject to a class[-]wide method of proof." The trial court explained, that even "if the class of employees could be identified, there is no means to ensure that there is any uniform manner in which compensable time can be determined."

Analysis

Appellants challenge the trial court's ruling through two general contentions. First appellants argue that the trial court "misconstrued the class" to focus on unpaid time and not missed meal periods, improperly conducted a merits analysis, and misapplied the controlling law of *Duran*, *supra*, 59 Cal.4th at page 29. According to appellants, these errors resulted in the trial court wrongly requiring appellants "to prove individual amounts of harm as a precondition to obtaining class certification." Second, appellants argue the trial court ignored evidence showing the existence of on-duty meal periods and therefore failed to recognize that common issues predominated the relevant analysis. We do not agree.

Although appellants argue their underlying theory is primarily a shared contention between proposed class members that the existence of remote time clocks placed in the work area necessarily resulted in the loss of required meal period breaks, the trial court's

order and the evidence in the record reflect the fact that the theory is not so well proven on a class-wide basis. We have no doubt that there are some common issues related to whether use of the remote time clocks resulted in lost time for some employees. But as the trial court noted, the evidence did not show that those issues would predominate in an action brought under such a theory. As Wonderful points out, the evidence submitted shows that there was no internal tracking mechanism that could identify, on class-wide basis, which employees used the clocks in question. Further, the record contained evidence that Wonderful provided additional break time to employees to compensate for the alleged loss. Thus, the trial court could reasonably view the theory presented in light of this evidence and, as it did, determine that the proposed class-wide claim was actually not amenable to class resolution based on the substantial individual issues that would arise regarding liability, including whether individual employees used the relevant clocks and whether that use actually caused a meal break violation in light of Wonderful's existing policies.

Contrary to appellants' arguments, this recognition of the substantial individual issues that would arise in proving the claim was not a requirement "to prove individual amounts of harm as a precondition to obtaining classification" in violation of *Duran*. First, we do not read *Duran* to require certification merely because a general theory of liability across a proposed class can be articulated. Rather, *Duran* itself explains the proper test is one that balances "whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Duran*, *supra*, 59 Cal.4th at p. 28.) Within that analysis, the manageability of individual issues "is just as important as the existence of common questions uniting the proposed class." (*Id.* at p. 29.) Thus, only when substantial individual issues identified by the trial court can be effectively managed will they not potentially bar a class certification. (*Ibid.*) The trial court's order did not run afoul of

this principle. The trial court looked at the nature of the claim and expressed its concern about individual issues of proof, ultimately concluding that it was not convinced the case could be effectively subjected to a class-wide method of proof. As the evidence supports this conclusion, we find no error.

Second, we do not see this conclusion as an example of the trial court ignoring relevant evidence. As appellants' note, evidence was submitted showing certain individual employees used the relevant time clocks and claimed that the location of those clocks resulted in the loss of required duty-free time. Evidence also showed that these employees did not receive premium pay for the alleged loss of time. However, the record also showed that there was substantial uncertainty regarding how, and likely no actual way, to identify affected employees on a class-wide basis. Moreover, there was little evidence regarding how to prove, on a class-wide and not individual basis, how employees were generally affected by the location of the clocks and the tasks alleged to be required on their off-duty time.

To the contrary, the evidence showed no way to specifically identify affected employees, implied each employee's claim would be different, and showed a policy to provide additional break time to employees using the contested clocks. That the trial court reviewed the totality of this evidence and found itself unpersuaded that class-wide proof on the claims was viable does not indicate an abuse of discretion. As explained in *Sav-On*, an abuse of discretion arises when an order is not based on substantial evidence, but " '[w]here a certification order turns on inferences to be drawn from the facts, " 'the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*Sav-On*, *supra*, 34 Cal.4th at p. 328.) The trial court's inference from the multitude of facts that the claim of unpaid work based on the location of distant time clocks was not amenable to class-wide treatment is founded on substantial evidence and not legally erroneous.

*Certification Based on Waiting Time Penalty and Wage Statement Claims*

Appellants contend the trial court erred because it did not certify a class based on appellants' waiting time penalty and wage statement claims. Appellants point to no place in the record where a class or subclass based exclusively on these claims was proposed by appellants or discussed by the trial court. Indeed, none of the proposed classes were identified based exclusively on the underlying claim, as opposed to the common characteristic of the employees in the proposed class. It thus appears that such a class was not proposed in the first place. Regardless, to the extent the trial court concluded that individual issues would predominate regarding liability of the claims discussed above, the existence of a separate penalty scheme for violations would not overcome that conclusion for the purposes of the waiting time penalty and wage statement claims.

However, this court has determined that one class needs to be considered by the trial court upon remand; that of employees affected by an allegedly improper meal break rounding policy. As appellants' note, such claims may raise issues under the waiting time penalty and wage statement class causes of action given the recent case of *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93. Accordingly, upon remand, the trial court may consider the effect this new law has on whether certification should be granted.

*Evidentiary Issues*

In addition to the substantive claims discussed above, appellants contend the trial court made several evidentiary errors when excluding evidence appellants submitted in support of their motion and their reply. The evidence excluded by the trial court falls within three general categories: (1) evidence submitted by appellants' attorney; (2) evidence in the form of declarations from 12 employees; and (3) evidence submitted by appellants with their reply brief.

Notably, a review of the arguments made on appeal does not clearly reveal what specific evidence was excluded, save for some limited examples quoted in the briefing

36.

and the fact that all proffered evidence on reply was excluded, nor why exclusion of that evidence prejudiced appellants' case. Rather, appellants primarily focus on highlighting what they contend are the errors in the trial court's reasoning in support of a claim that this evidence was, in fact, admissible. This focus makes review of the claims exceedingly difficult, particularly because the various relevant documents are spread out across the record and multiple submissions augmenting that record. This court notes that it has reviewed the underlying evidence and, although it will not recount it fully herein, summarizes the underlying evidence below.

With respect to evidence submitted by appellants' attorney, the trial court excluded deposition testimony related to the types of time recording systems used, how they operated, and where various time clocks were located over the years; deposition testimony from Torres regarding his claim he was required to carry a radio; deposition testimony from a payroll employee regarding knowledge of and application of premium pay policies for rest and meal periods; and statements by counsel regarding economic views of wage theft.

With respect to employee declarations, the excluded evidence included statements such as: "I was always on duty during my meal breaks and rest breaks"; I "was not paid all meal and rest break premiums owed to me" in final pay checks; and "I worked through many rest breaks, but was never paid a one hour rest break premium" when that occurred. Additionally, the excluded statements included calculations of walking time between locations, claims that radios were required to be possessed, claims that first meal breaks were not taken within five hours for that individual or that second meal breaks were not taken within 10 hours, assertions regarding when or whether training on such issues occurred, claims certain employees needed to be relieved to take breaks, where certain employees PPE stations were located for some periods of time, and allegations supervisors knew of missed breaks.

37.

Finally, the evidence submitted in reply included new evidentiary submissions that were designed to highlight why the trial court should not accept Wonderful's claims regarding the evidence or attempting to rebut positions taken by Wonderful. On appeal, appellants contend that none of this evidence raised new issues, but merely sought to rebut claims made by Wonderful.

"We review the trial court's ruling on the admissibility of evidence for abuse of discretion. [Citation.] A court's error in excluding evidence is grounds for reversal only if the appellant demonstrates a miscarriage of justice, that is, that a different result would have been probable had the error not occurred." (*Major v. R.J. Reynolds Tobacco Co.* (2017) 14 Cal.App.5th 1179, 1202.)

Despite the difficulties, this court has reviewed the evidence, objections, and trial court's ruling in this matter. This court notes at the outset that at least some of the grounds supporting exclusion of certain employee declarations on technical grounds, such as failure to sign or failure to identify the purpose of the declaration, have not been contested in this appeal. In addition, it is not apparent that the trial court erred in sustaining certain objections, such as those claiming the declarants were making legal statements. And, at least with respect to claims regarding possession of a radio, the parties have not appealed the denial of class certification on that claim, rendering those objections and rulings moot.

This court has assumed, however, that the trial court erred in excluding the totality of the evidence submitted. Even under this assumption, appellants have not shown an error warranting reversal. As discussed extensively above, the record presented to the trial court often contained conflicting credible evidence from both sides on issues regarding the class-wide nature of appellants' claims. The trial court properly considered this evidence when presented with it and weighed its credibility, not based on the amount submitted but upon its meaning to the claims. Upon review of the evidence excluded and subject to this appeal, this court notes that the vast majority of the contested evidence is

repetitive across declarations and submissions and duplicative of evidence already before the trial court. Further, upon review of the excluded evidence, this court has been unable to identify any proffered evidence that, if admitted, would create a reasonable probability that the trial court's ruling would be reversed. Thus, even if this court assumes error, it finds no prejudice in the trial court's exclusion of evidence in this instance. The trial court's exclusion of evidence thus presents no grounds for reversing its ruling denying class certification.

### *The Summary Judgment Order*

This court next turns to the trial court's order granting summary judgment as to all claims brought by Zepeda and Torres. Although there is no shortage of issues raised by the parties, this court first provides a full summary of the trial court's summary judgment ruling, rather than again breaking the order apart, as some of the trial court's reasoning applies across multiple claims, and multiple claims are often covered by distinct factual theories for liability. Following this, this court outlines the rules governing summary judgment and our standard of review before turning to the issues raised by the parties.

#### *The Trial Court's Order*

The trial court issued a detailed minute order resolving the summary judgment disputes. After an introduction and summary of the proceedings and law, the trial court's order begins by granting summary judgment as to Villegas's action based on the fact that Villegas failed to oppose the motion and the trial court's conclusion that Wonderful had met its burden of production regarding the claims against it.

The trial court then resolved several objections raised to evidence submitted in support of the motions. First, the trial court granted Wonderful's relevance objections to several employee declarations. The trial court wrote that there was "nothing to connect the facts stated in these declarations to the specific claims of Zepeda or Torres." Next, the trial court considered Wonderful's objections to attorney Downey's declaration submitted in support of appellants' opposition. The trial court expressly overruled

39.

objections 2, 3, 9 through 13, 16, 19, 23, and 32, but sustained "the balance of the objections." Finally, the trial court disregarded appellants' "objections asserted within their opposition separate statements" on the ground those objections were "to the assertions of fact, as opposed to the evidence cited" to support those assertions.

Following these preliminary rulings, the trial court worked its way through the merits of the summary judgment motions. In doing so, the trial court grouped related causes of action and considered them in the context of issues raised in the summary judgment motion. The first of these groupings was identified as "Unpaid Wages/Knowledge" (underlining omitted) and covered the first three causes of action.

The trial court described appellants' contentions as claiming Wonderful was "liable for unpaid wages because it requires employees to put on Personal Protective equipment ('PPE') and employ Good Manufacturing Practice ('GMP') before clocking into their shifts." After noting the type of PPE required, such as "a hard hat, ear plugs, safety glasses," "a vest," and "a hair and beard net," the trial court reviewed the evidence submitted regarding Wonderful's policies as they related to off-clock work claims. The trial court explained the evidence shows Wonderful "prohibits employees from working off the clock at any time" and that appellants' claims "that they were logistically required to put on their PPE, wash their hands, and put on hair and beard nets before clocking in because of clock locations are without merit." After noting Zepeda and Torres had both testified "that their leads and/or supervisors told them not to work off the clock and [that] they never reported any alleged meal break violations, rest break violations, or unpaid work," the trial court explained appellants sought to overcome these facts by arguing Wonderful "is imputed with knowledge of off-the-clock work because of the size of its facility," the location of some clocks, and staffing issues for forklift operators.

The trial court noted, however, that appellants had provided no meaningful legal citations for the claim that such knowledge could be imputed to an employer. Principally relying on *Jong v. Kaiser Foundation Health Plan, Inc.* (2014) 226 Cal.App.4th 391, 399

40.

(*Jong*), the trial court concluded that "[k]nowledge cannot be imputed to an employer by conjecture" and that "a claim that the employer should have known employees worked off the clock fails" where the "employer specifically prohibits work off the clock and there is no evidence the employee was unofficially told otherwise." In light of its discussion of *Jong*, the trial court found that evidence of the need to doff and don PPE or of staffing shortages was insufficient to create a material issue of fact where appellants testified they knew of the policy not to work off the clock, were not pressured otherwise, and, as to Zepeda, testified, "[H]e never had less than 10 minutes on [a rest break]." Ultimately, the trial court found the evidence showed that appellants always had access to a time clock that would not "necessitate donning PPE before clocking in," that "employees were not required to remove PPE before breaking," and that "hand-washing and putting on bear[d] and hair nets" often "occurred after clocking in." In light of this evidence, the trial court found there was no material issue of fact which could support appellants' claim that Wonderful knew of off-the-clock work.

The second grouping was identified as "Rounding" (underlining omitted) and again covered the first three causes of action. The trial court accepted as undisputed the fact that Wonderful "maintained and employed a rounding policy" that paid to the nearest quarter-hour and rounded both up and down. Reviewing *See's Candy* and a case since overruled on other grounds, the trial court found no evidence to support a claim that Wonderful's rounding policy was not neutral on its face or in its implementation. The trial court found Zepeda's and Torres's experiences under the policy, being underpaid in between 33 and 46 percent of shifts, was insufficient to create a material issue of fact in light of uncontested expert evidence that "46 [percent] of all shifts demonstrate that [Wonderful's] employees were paid for all time clocked, or were benefited."

The third grouping was identified as "Meal and Rest Breaks" (underlining omitted) and covered the fourth cause of action. After recounting the general law on rest and meal breaks, the trial court wrote that in "ruling on class certification, this Court has

41.

already found that [Wonderful] maintained a lawful policy and/or practice to offer legally compliant meal and rest breaks." The trial court then noted that unlike other employees, "both Zepeda and Torres were responsible for taking their breaks" and that employees were "obligated per the handbook to report issues with meal and rest breaks." The trial court then explained that without "any legal or evidentiary support," appellants argued that Wonderful's break policies were illegal under the premise that Wonderful's audits of its employee records were flawed and premiums were not being paid. The trial court rejected this claim, noting that "whether or not penalties are paid is not an element necessary to establish a violation" of the obligation to offer proper breaks.

The trial court then reviewed the evidence submitted by Zepeda and Torres. The trial court acknowledged Zepeda asserted his breaks were short or missed because he was required to change PPE during breaks, could not leave his post without being relieved, or would harm his short-staffed line if a break were taken. However, the trial court found these "restrictions were self-imposed" because there was "no evidence" Zepeda "was ever told by anyone in a position of authority that he could not leave his post without being relieved or that he had to put on his PPE during his breaks." With respect to Torres, the trial court recognized Torres's testimony that "his meal and rest breaks were interrupted on a daily basis by calls on his radio," that "he often missed rest breaks because the work simply needed to get done so he chose to stay on duty," and that "his lead instructed him to keep his radio on him at all times and to answer calls when received." However, the trial court also noted that "no one in a position of authority ever told" Torres he could not take rest or meal breaks and that Wonderful's "policy does not require its employees to carry and/or respond to their radios during off work hours." For both Zepeda and Torres, the trial court noted that neither had reported break issues to the Human Resources department.

Based on this review, the trial court concluded it could not "be disputed that [Wonderful's] policy affords compliant meal and rest breaks," that if a break was

interrupted, "the employee should restart the break," and that issues were to be reported to Human Resources. Based on the lack of reported violations by Zepeda and Torres, the trial court concluded Wonderful "cannot be held liable for meal and rest break issues of which it has never been informed." This lack of a triable issue of material fact supported granting summary judgment.

Having concluded that summary judgment was proper on the four primary causes of action, the trial court concluded that appellants' "derivative claims fail." The trial court summarized its overall finding by noting that the primary failing in appellants' oppositions was leaping "to an effort at litigating the class or PAGA claims, or claims of others … without specifically raising a triable issue of material fact that [appellants] were individually aggrieved."

Following this conclusion, the trial court identified several problems it found with both Wonderful's and appellants' submissions. Within these problems, the trial court noted specifically that neither "Zepeda nor Torres submit[ted] a declaration in support of their oppositions," leaving the trial court to "rely on portions of their deposition testimony," which had not been properly highlighted. The trial court also noted that the "only documentary evidence of Torres's and Zepeda's purported harm is set forth in Exhibit 2, which is Attorney Downey's self-created table of [appellants'] time." The trial court affirmed that objections to this summary had been sustained. Further, the trial court noted appellants had failed to object to any evidence submitted by Wonderful. The trial court did not explain whether it relied on these issues to support its summary judgment ruling.

*Summary Judgment Principles and Standard of Review*

"A trial court properly grants summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant who moves for summary judgment bears the initial burden to show the action has no merit—that is, 'one or more elements of the

43.

cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.' (*Id.*, subds. (a), (p)(2).)  Once the defendant clears this initial hurdle, the burden shifts to the plaintiff to demonstrate a triable issue of material fact." (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 732.)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construing the evidence in favor of the party opposing the motion and resolving all doubts about the evidence in favor of the opponent.  [Citation.]  We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary adjudication as a matter of law." (*Doe v. Department of Corrections & Rehabilitation*, *supra*, 43 Cal.App.5th at p. 732.)

*Knowledge of Off-the-clock Work Resulting in Underpayment*

Appellants' first three causes of action for failing to pay minimum wage, compensate for all hours worked, and pay overtime wages were all grouped together and considered for summary judgment on the same grounds.  The trial court concluded the parties had framed one of the core disputes in these causes of action to center around activities—whether it be doffing and donning PPE, clocking in at far-away stations, or simply having to work because of staffing issues—that Wonderful was not shown to have knowledge about.  According to the trial court, this lack of knowledge precluded a successful claim under the case law.

On appeal, appellants challenge the trial court's conclusion that summary judgment is proper on the ground that Wonderful lacked actual or constructive knowledge of appellants' off-the-clock work.  The structure of appellants' arguments, however, do not clearly identify the scope and nature of their claims in this space. Rather, some of the argument overlaps with or appears to support appellants' claims regarding meal and rest break violations, with the apparent position being that Wonderful's failure to pay proper wages occurred because in all aspects of the working

44.

environment, from initially clocking in through the end of the workday, appellants were regularly engaging in off-the-clock work. Upon review of the full scope of the arguments, we conclude that appellants raise an argument that Wonderful had knowledge of off-the-clock work that arose because of practices related to the doffing and donning of PPE and the relative location of time clocks. We therefore focus on that discernable contention.

Wonderful responds by supporting the analysis of the trial court. Focusing on Wonderful's policies and procedures as shown in the record, the lack of evidence regarding knowledge of appellants' claims, and the law as generally summarized in *Jong*, 226 Cal.App.4th 391, Wonderful asserts that none of appellants' arguments show that a material issue of fact existed regarding Wonderful's actual or constructive knowledge of off-the-clock work done by either Zepeda or Torres. Notably, Wonderful accepts that the evidence may show the existence of off-the-clock work generally, a point it concedes the trial court accepted as true, but maintains that nothing in the record shows that Wonderful was potentially aware of such work being done by Zepeda or Torres nor potentially aware of individual choices made by employees that resulted in potential off-the-clock work violations.

Although appellants seek to distinguish *Jong*, they do not challenge the general legal framework set forth in that case. That framework shows that for off-the-clock work claims, certain general principles articulated in federal cases under the Fair Labor Standards Act of 1938 (29 U.S.C. § 207(a)) are applicable to claims made under California law. (*Jong*, *supra*, 226 Cal.App.4th at pp. 395–396.) Relevant to this case, these principles state that an employer may not escape liability for off-the-clock work by "negligently maintaining records … or by deliberately turning its back on a situation," but neither can an employee "prevent an employer from acquiring knowledge" of off-the-clock work by hiding their efforts or failing to inform their employer of the work and then claim the employer forced the employee to engage in that claimed work. (*Id.* at

45.

p. 395.)  Further, the employer must either actually or constructively know that the aggrieved employee is engaged in the work, not merely that such off-the-clock work is or may be occurring.  (*Id.* at p. 396.)

In the context of a summary judgment motion, *Jong* discusses several cases that dealt with what type of evidence could support an employer's actual or constructive knowledge of off-the-clock work along with the actual evidence presented in that case. *Jong* noted that general evidence that other employees were working more than the plaintiff's reported hours was generally insufficient to create a material issue of fact, particularly so if other evidence showed policies not to permit such work, a lack of direction to complete the challenged tasks when not clocked in, or general payment for additional work that was properly recorded.  (*Jong*, *supra*, 226 Cal.App.4th at pp. 396–398.)  Even evidence that some period of time occurred between when a store was opened and when an employee clocked in was insufficient, standing alone, to create an issue of fact.  While such evidence could suggest an employer could have known of off-the-clock work, without more it did not reach the level of demonstrating an employer should have known of such work.  An employee would need to provide some evidence that could show a reasonable belief by the employer, at the time, that the employee "did not begin or end work except as he reported."  (*Id.* at p. 399.)  Thus, while "an employer's actual or constructive knowledge of the hours its employees work is an issue of fact, the issue on a summary judgment motion is whether evidence has been presented that would support a finding" the employer had knowledge of off-the-clock work.  (*Ibid.*)

In this case, appellants point to general evidence suggesting that some employees may have been engaging in off-the-clock work at certain points of time.  This includes evidence that before 2014, some PPE stations may have been located in an area reached prior to the place where employees punched in and a supervisor's declaration, submitted on behalf of Wonderful, that states employees would normally don PPE and wash up prior to clocking in.  This general evidence was then bolstered by Zepeda's and Torres's

testimonies that they and their coworkers generally doffed or donned PPE during off the clock time.

The trial court recognized this evidence was sufficient to suggest off-the-clock work was occurring.[11] However, the trial court found this evidence was insufficient to demonstrate Wonderful knew of that work because Zepeda and Torres admitted they had not specifically told Wonderful of the additional work and because there were no policies requiring that employees doff or don PPE off the clock. Wonderful contends this analysis was correct and further claims "there is no evidence that [Wonderful] knew or should have known of any off-the-clock work," citing to the location of certain time clocks in the facilities used by Zepeda and Torres to contend that employees immediately encountering those clocks when entering facilities renders "the potential for constructive knowledge of off-the-clock work impossible."

Although the evidence in this case is not particularly strong, in our independent review, we conclude that it is sufficient to create a material issue of fact regarding Wonderful's constructive knowledge of off-the-clock work by Zepeda and Torres. We agree with the trial court and Wonderful that the existence of policies regarding off-the-clock work and admissions from appellants that they did not report any off-the-clock work to Wonderful substantially undercuts any claim of direct knowledge. However, we do not find that this case falls within *Jong*'s structure for granting summary judgment on a constructive knowledge theory. As noted, in this case, appellants identified evidence showing both that Wonderful was aware some PPE stations were positioned in locations that required employees to engage in work preparation activities prior to clocking in, including a statement submitted by Wonderful that implied this was common practice for

---

**11** We readily reject appellants' argument that the trial court failed to review the evidence in the light most favorable to appellants and ignored submitted evidence because it noted the "evidence does not unequivocally support" the claim that Torres and Zepeda were working off the clock. The trial court specifically noted its "discussion presumes that [appellants] Torres and Zepeda were in fact working off the clock."

some employees at certain times. Zepeda and Torres then both provided deposition testimony confirming that they were employees who had engaged in such activities based on the common practices employed by their units and the location of PPE stations that encouraged that behavior.

In *Jong*, the plaintiff was responsible for documenting his working hours and claimed that the need to complete tasks while remaining under budget forced him to work hours that were not recorded. In this context, where the employer had policies against overtime work and no meaningful way to know that their employee was working off the clock, the record could not support a finding of knowledge on the part of the employer. (*Jong*, *supra*, 226 Cal.App.4th at pp. 394, 397–398.) Here, however, the nature of appellants' claim is not that they were hiding their additional work from their employer, but that their employer had set in place certain working conditions that required off-the-clock work. In support of this claim, appellants marshalled evidence that they, and other employees working at the plant, were engaging in claimed off-the-clock work based on the placement of PPE equipment prior to their clock-in stations and that Wonderful's supervisors were aware of this common need and practice.[12] This is a fundamental difference that causes the case to fall in line with *Jong*'s affirmation that an employer cannot avoid liability by "negligently maintaining records … or by deliberately turning its back on a situation." (*Jong*, at p. 395.) In this context, the mere failure to report the otherwise constructively known off-the-clock work is not grounds to grant summary judgment.

The trial court therefore erred in granting summary judgment on appellants' first three causes of action with respect to off-the-clock work claims.

---

[12] We agree with the argument that the location of time clocks, generally, is insufficient to prove knowledge of off-the-clock work, particularly in the D2 facility, and particularly if employees were free to choose which clocks to use. However, this argument does not account for the claim that clocks were placed after other work-related stations in the employee check-in process.

*Underpayment Based on Time-rounding Assertions*

Appellants' first three causes of action were also grouped together with summary judgment granted for Wonderful on the assertion that Wonderful engaged in an improper rounding process. As noted above, the trial court, relying principally on *See's Candy*, found no material issue of fact to support a claim that Wonderful's rounding policy was not neutral on its face or in its implementation.

Appellants challenge the trial court's ruling as to both the rounding policy generally and as to rounding applied to meal breaks. On the general claim, appellants point to evidence showing that both Zepeda and Torres were underpaid because of the rounding policy in place. Zepeda further notes he was underpaid on roughly two-thirds of his total shifts. Appellants then support their claim with expert evidence from the proposed class analysis showing both an overall loss of approximately 30,000 hours to all employees subjected to the rounding policy over a seven-year period and that this underpayment occurred in every year analyzed.

In opposition, Wonderful points to its policy to provide a five-minute grace period for clocking into shifts, which allowed employees to freely use their time after clocking in prior to their scheduled start time, its own expert's opinion regarding the impact of the rounding policy, and Zepeda's and Torres's failure to demonstrate that they were working during the time rounded from their paychecks to support their claim no material issue of fact exists. With respect to this evidence, Wonderful offered a declaration stating employees were granted a grace period "for clocking in five minutes before and up to five minutes after their scheduled shift time without being subject to discipline" in order "to avoid large numbers of employees rushing to the time clocks at once to clock in at their exact start time." Employees were purportedly "free to use those few minutes before their shift as their personal time." In addition, Wonderful's expert opined that appellants' expert evidence was flawed or not meaningful on points made. As an example, Wonderful's expert noted that the 30,000-hour time difference was spread

"over 1,502,674 shifts," thus demonstrating only a "one minute and 12 seconds" per-shift average difference. Further, when Wonderful's expert corrected for purported errors in appellants' expert's methodology, he found "the net difference is 1,742,098 minutes to the employer's favor over a total of 1,449,194 shifts" and noted that within that net calculation "2,601,004 minutes accrue to the benefit of the employees."

Notably, with respect to the overall claim that Wonderful engaged in an improper rounding policy, this evidence is not materially different than that presented to the trial court in the class certification process. As we noted in that discussion, the standard set forth in *See's Candy* is that an employer may use a rounding policy "if the rounding policy is fair and neutral on its face and 'it is used in a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' " (*See's Candy*, *supra*, 210 Cal.App.4th at p. 907.)

Similar to appellants' argument that the trial court improperly ignored evidence showing an illegal application of an otherwise facially neutral rounding policy, appellants argue in the summary judgment context that the trial court ignored key factual conflicts resulting from the evidence submitted. We do not agree. As we noted previously, the trial court determined that appellants' evidence showing some amount of underpayment occurred was insufficient to demonstrate an otherwise neutral rounding policy was being used in a manner that failed to compensate employees for all time worked. (See *AHMC Healthcare*, *supra*, 24 Cal.App.5th at p. 1024 [fact that small majority of employees were undercompensated was not sufficient to create an issue of fact whether an otherwise neutral policy was improper.)

Nor do we disagree with the trial court's analysis in our independent review. Appellants' evidence in this case is stronger than that discussed in cases such as *AHMC Healthcare* and *See's Candy*. For example, while in *AHMC Healthcare* the rounding policy undercompensated a majority of employees, it provided an overall benefit to the group as a whole and some hospitals were overpaid while others were not. (*AHMC*

*Healthcare*, *supra*, 24 Cal.App.5th at pp. 1027–1028.) In this case, however, appellants can point to the fact that a majority of employees were undercompensated, the under compensation persisted across Wonderful's employees, and the under compensation persisted across the full scope of the timeframe analyzed. But appellants cannot overcome the fact that the rounding policy is both facially neutral and not materially skewed in compensation. There is no doubt that the policy rounds in both directions without an eye toward who is benefited. (See *id.* at p. 1027.) Further, although evidence of under compensation was submitted, appellants identify no evidence challenging the fact that under their own computations, the under compensation comprises an average of roughly one minute per shift or the fact that a substantial percentage of employees were over compensated under the policy.[13]

To generate a material issue of fact, then, appellants need to point to some evidence of bias in the otherwise facially neutral rounding policy that is being implemented in a generally neutral manner. (See *AHMC Healthcare*, *supra*, 24 Cal.App.5th at p. 1028 [noting analysis of multiple datapoints could show bias, such as in a system that overcompensates lower paid employees at the expense of higher paid employees, but that no evidence of a bias in the system or in the application of the policy was identified].) Here, as in *AHMC Healthcare*, appellants do not identify any such evidence. Accordingly, as to a general assertion that Wonderful failed to pay all wages owed due to its rounding policy, summary judgment was appropriate.

---

[13] In reply, appellants make a bald claim suggesting the trial court acknowledged that under Wonderful's "policy, an employee may lose '*7 minutes per day*' of compensation." Representative of several statements made by appellants in their briefs, this is not a fair reading of the trial court's analysis. Rather, the trial court merely acknowledged that the rounding policy worked to round down on the first seven minutes and round up on the second seven minutes of a quarter-hour interval. This base fact regarding the rounding policy would have no correlation to a seven-minute loss of time unless there was, for example, a policy that employees clocked in at eight minutes past the hour to ensure they were not paid until the start of the next quarter-hour. No such evidence was presented.

We next turn to appellants' argument that summary judgment was improper with respect to the time rounding of meal breaks. As we noted in the class certification discussion, the law has changed with respect to how rounding meal periods affects claims that proper meal break periods were not provided. (See *Donohue*, *supra*, 11 Cal.5th at pp. 73–74.) In our discussion regarding class certification, which was not dependent upon the underlying claim raised but rather the class proffered, we concluded that this change in the law required a remand for the trial court to consider certification in light of *Donohue*. We do not, however, reach the same conclusion with respect to appellants' assertions that they were not compensated for time worked, as opposed to provided with proper premium payment penalties, based on the rounding of meal breaks.

Although *Donohue* provided substantial guidance on the effect a rounding policy has on the requirement that an employer both provide and keep proper records regarding legally mandated meal breaks, it also expressly noted that the question in that case was "not whether AMN's rounding policy resulted in the proper compensation of employees for all time worked" but rather whether a rounding policy could be relied upon to demonstrate "that no meal period violations occurred for which premium wages were not paid." (*Donohue*, *supra*, 11 Cal.5th at p. 66.) Relying on specific California requirements on the amount of break time that must be provided to avoid paying premium payment penalties, our Supreme Court in *Donohue* determined that a rounding policy was inconsistent with the purposes of those requirements. In doing so, our Supreme Court specifically limited its consideration of the analysis utilized in *See's Candy* to rounding policies "in the meal period context." (*Donohue*, at pp. 72–73.)

Upon review of the analysis in *See's Candy* and *Donohue*, we conclude that *Donohue*'s rejection of facially neutral rounding policies in the context of meal period violations does not preclude the use of facially neutral rounding policies in determining overall hours worked, even if meal periods are rounded in the overall calculations. As *Donohue* makes clear, additional claims for failure to provide proper meal breaks or

52.

premium payments are available when rounding policies are improperly used to mask illegal meal policies, and indeed such claims are raised in this case. Given these additional avenues for relief, we conclude that a facially neutral rounding policy, " 'used in a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked' " remains a valid means by which employers can calculate and compensate employees. (*See's Candy*, *supra*, 210 Cal.App.4th at p. 907.)

Accordingly, given that appellants could not provide evidence creating a material issue of fact regarding whether there was bias in the otherwise facially neutral rounding policy that Wonderful was implementing in a generally neutral manner, we find that summary judgment with respect to the first three causes of action, seeking damages for failure to pay employees for all time actually worked, based on an allegedly illegal rounding policy, was proper. (See *AHMC Healthcare*, *supra*, 24 Cal.App.5th at p. 1028.)

*The Meal and Rest Breaks Claim*

Appellants' fourth cause of action was identified in the context of the summary judgment motion as the "Meal and Rest Breaks" claim. (Underlining omitted.) As noted above, the trial court's summary judgment ruling turned on its conclusion that it had "already found that [Wonderful] maintained a lawful policy and/or practice to offer legally compliant meal and rest breaks" and that "both Zepeda and Torres were responsible for taking their breaks." Although the trial court recognized evidence submitted by Zepeda and Torres in support of their claims, it discounted this evidence by finding no evidence either were ever told by a person in a position of authority that they could not fully take their breaks. Given this lack of direction, the trial court found it dispositive that Zepeda and Torres had not informed Wonderful of their work during breaks, concluding Wonderful "cannot be held liable for meal and rest break issues of which it has never been informed."

Appellants raise a host of purported issues with the trial court's ruling on this point, identifying individual evidence relating to Zepeda and Torres that they claim raise issues of fact regarding the meal breaks offered to them, pointing to company policies and practices applicable to one or both of Zepeda and Torres that they claim support their position, and noting flaws in the evidence submitted by Wonderful that appellants' claim the trial court wrongly relied upon for the purposes of summary judgment.

With respect to Torres, appellants first point to evidence submitted in opposition to the summary judgment motions that was generated in the context of the class certification question showing that Torres missed his second meal period in 100 percent of all shifts over 12 hours and took a late first meal period in 54.1 percent of all shifts over six hours. Appellants then point to Torres's deposition testimony, which they claim shows he was aware of working at least one shift where he was provided no second meal break, identified another time when he requested a break and was denied, claimed to require permission to take any meal breaks, and did not otherwise disclaim the fact that instances where he failed to be given a break occurred regularly. In addition, appellants point to deposition testimony that Torres was told by his supervisor that he was required to carry and respond to a radio at all times, and that his breaks and lunches were regularly interrupted due to this responsibility.

With respect to Zepeda, appellants submitted similar class certification evidence, showing Zepeda missed his second meal period in 100 percent of all shifts over 12 hours and took a late first meal period in 69.2 percent of all shifts over six hours. Appellants note that Wonderful's attempts to dispute the timing of Zepeda's breaks still show more than one-third of his first meal breaks on shifts over six hours occurring after five and a half hours. Appellants also point to Zepeda's deposition testimony, where he testified to needing to be relieved to take breaks because he would get in trouble for leaving his line. Appellants further note additional declaration testimony submitted by Wonderful referencing the need to find a "reliever" to take a break.

54.

For a more general argument, appellants point to Zepeda's testimony that he had to doff and don PPE prior to clocking in and after clocking out and that he regularly used the catwalk time clocks that he claimed prevented him from taking a full 30-minute break to argue none of Zepeda's offered breaks were duty free. Appellants note that Wonderful had submitted its own declarations showing that other employees also doffed PPE after they had clocked out and walked out of the work zone based on the location of the catwalk time clocks.

In addition to the individualized evidence, appellants again rely on the general evidence submitted with the class certification motion. As noted previously, this includes evidence from Wonderful's employee handbooks that could be interpreted to permit a first meal break within the first six hours of employment, as opposed to the first five hours, and a second meal break within 12 hours, as opposed to 10 hours.

In response, Wonderful presents much of the same evidence regarding its general policies and practices as was included in the class certification question. This includes its formal policies to provide a meal break before the end of the fifth hour of work and before the end of the tenth hour of work, to permit employees whose breaks have been interrupted to restart their breaks, and to provide its employees with a greater than legally required 15-minute break for every four hours worked. Wonderful further points to statements from Zepeda and Torres that indicate they had not been specifically told to work during their break and meal periods, they could not accurately estimate the amount of time spent donning and doffing PPE, they never informed Wonderful of their break issues, and they took some portions of their offered breaks at the correct times.

Upon review of the evidence and arguments made, the analysis breaks down into two disputes over the claims that Zepeda and Torres make regarding their required meal and rest breaks. The first dispute centers around breaks that were not taken or were not

taken within the time requirements set forth in the law.[14] The second dispute centers around breaks that would not otherwise appear to be improper but that Zepeda and Torres claim failed to meet the requirements of the law because neither was actually relieved of duty during the break.

With respect to the first dispute, this court considered the nature of the conflict between appellants' and Wonderful's evidence in the context of the class certification motion. As noted above, the evidence created a material issue of fact regarding whether Wonderful's meal break policies were in fact legally implemented or whether practices undertaken by Wonderful resulted in employees not being offered proper first meal breaks until their sixth hour of work and not being offered proper second meal breaks on shifts over 12 hours. Upon review in the context of Wonderful's summary judgment motions, we affirm our finding that a material issue of fact exists.[15]

While it is correct that Wonderful has proffered evidence of a potentially proper meal break policy, both Zepeda and Torres have proffered evidence not just that they did not take meal breaks according to the policy, but that they were unable to do so. In addition, appellants have demonstrated through a general review of Wonderful employees, done as part of the class action discussion, that a substantial portion of employees take late first meal periods or no second meal periods in a manner and at a frequency that creates a material issue of fact regarding whether Wonderful's stated

---

**14** This version of the dispute would also cover meal breaks that were improperly rounded under *Donohue* to the extent the actual time logs show the break taken was less than the required 30 minutes.

**15** We note that in the context of the class action claims, the trial court is specifically authorized to and, as we noted above, did properly resolve the factual dispute on this point for the purposes of that motion. However, Wonderful points to no law, and we have found none, that would allow the trial court to resolve that same factual dispute in the context of a summary judgment motion. Ultimately, a determination that individual circumstances will predominate in any challenge to the stated meal policies is not a final adjudication that the underlying legal policy is being properly implemented. Accordingly, the trial court's reliance on its prior determination that proper meal breaks were offered cannot stand.

policies are not properly implemented. Appellants' individual statements coupled with the general sampling evidence, although certainly not dispositive, is sufficient to create a material issue of fact in this area.

Wonderful argues that summary judgment remains proper because it could not have known of potential issues with the timing of meal breaks under its policies given that Zepeda and Torres did not directly inform Wonderful of their claims. Wonderful makes claims such as "employers may reasonably assume the opportunity to take compliant meal periods was provided if, as here, employees never complained." But such a claim is incorrect.

As explained in *Donohue*, "time records showing noncompliant meal periods raise a rebuttable presumption of meal period violations at summary judgment." (*Donohue*, *supra*, 11 Cal.5th at p. 74.) This is so both because employers are responsible for providing and tracking compliant meal periods and because claims that such breaks were, in fact, offered but not taken is an affirmative defense upon which the employer has the burden of proof. (*Id.* at pp. 75–76.) Accordingly, when records show either a short or a missed meal break, courts must presume a violation and, to obtain summary judgment, an employer must provide undisputed evidence that a penalty was paid or the meal break was offered and not taken—evidence which may need to be as explicit as contemporaneous affirmations of the offer. (*Id.* at pp. 76–77.)

Wonderful's base claim of a lack of knowledge because the missed breaks were not specifically reported cannot stand. Wonderful was in possession of time records showing missing breaks, which trigger a presumption at the summary judgment stage that the break was not offered. Absent unrebutted evidence the breaks were offered— evidence that does not exist given Zepeda and Torres's express testimony they were not always offered or relieved for meal breaks and the general evidence showing a substantial number of employees regularly being provided untimely meal breaks or taking no breaks

at all—summary judgment cannot be granted on a claim Wonderful was not made aware of policy violations by its employees.

With respect to the second dispute, those breaks that would appear facially proper but appellants claim were not "duty free," this court concluded above that appellants had submitted sufficient factual support to create a material issue of fact regarding Wonderful's constructive knowledge of off-the-clock work in the form of doffing and donning PPE. This issue of fact regarding the existence of off-the-clock work necessarily affects at least some potential meal break claims. For example, in the context of meal breaks taken while either appellant worked at the D2 facility during the time PPE was allegedly placed prior to the clock-in stations, a material issue of fact exists as to whether this off-the-clock work meant that meal breaks lasting exactly 30 minutes were truly duty free. While Wonderful asserts that in some instances it provided up to 35-minute breaks and that there is little evidence of the amount of time such doffing and donning activities occurred, these potential failures on appellants' part do not undercut the fact that with respect to at least some breaks a material issue of fact has been identified. The fact that appellants claim may appear particularly weak or limited does not undercut the actual material issue of fact identified.

In addition to the PPE issue, the parties appear to also dispute whether an issue of fact exists regarding whether Zepeda was offered proper rest breaks and whether Torres was ever properly relieved of duty based on his possession of a work-issued radio. We first consider Zepeda's assertion that he was not offered proper rest breaks. In support of this claim, appellants point to a single question and answer from Zepeda's deposition that reads: "Q. Okay. What percentage of the time did you not ever get a rest break? [¶] … [¶] A. About 60 percent." Appellants contend this creates a material issue of fact regarding whether Zepeda was, in fact, authorized and provided with proper rest breaks. In opposition, Wonderful presents substantial evidence that its company policies and procedures provide for adequate breaks under the law.

Upon review of the record, we do not see Zepeda's single statement as sufficient to create a material issue of fact on this claim. Indeed, appellants' own arguments highlight the problem in Zepeda's lone statement. In further support of Zepeda's claim, appellants point this court to testimony from Torres and some Wonderful employees that they could not take breaks unless specifically relieved from their station. Others stated they were required to take a break according to a provided schedule or were responsible for taking their own breaks within the company guidelines. None of this evidence cited, however, indicates which of these requirements Zepeda was subjected to or what type of break schedule Zepeda was expected to adhere to while working for Wonderful.

Rather, to the extent any evidence of why Zepeda may have missed rest breaks as he alleged was identified by appellants, it was supportive of the claim that Zepeda willfully chose to forego those breaks. In the same deposition, when asked why Zepeda believed many of his breaks occurred late, he stated he "just wouldn't take them" because "I couldn't starve my line. I figured I'd lose my job." Zepeda further admitted he had not been told he could not take his breaks or that he would lose his job if he did, and the arguments presented by appellants provide no basis to conclude that some act or policy by Wonderful was the cause of Zepeda's allegedly missed rest breaks.[16]

As explained in a different context in *Donohue*, employers are only liable if they do not provide employees with an opportunity take a required break. They are not liable if the employee unilaterally chooses to take a short or delayed break, or no break at all, and need not police employees' actions to ensure no work is done. (*Donohue*, *supra*, 11 Cal.5th at p. 78.) In this case, Zepeda's lone claim of missed breaks does not provide

---

[16] The parties argue this issue from Zepeda's individual perspective. Accordingly, we take no position on whether the evidence cited from Torres regarding the need for relief before a break could be taken is sufficient to support a similar claim as that argued for Zepeda. We do note, however, that in the cases where Zepeda appeared to indicate a break was missed because a reliever was not sent, the record provides no meaningful context to indicate that was part of a broader policy to require relief for his breaks.

support for a claim that Wonderful did not provide an opportunity to take required breaks, and the remaining evidence only highlights that without evidence as to Zepeda's specific situation, there is no basis to infer that such breaks were not provided.

With respect to Torres's claim that he was not provided duty-free breaks because he was required to keep and respond to calls on his radio, however, we do find a material issue of fact. As it did with Zepeda, Wonderful presents substantial evidence that its company policies and procedures provide for adequate breaks under the law and, additionally, that it tells employees not to utilize their radios during breaks. It notes, though, that because such breaks need not be recorded, "supervisors are held accountable for providing the appropriate breaks and all employees are expected to comply with the rules regarding breaks, including an affirmative obligation to report any issues to Human Resources." In contrast to Zepeda's mere statement he missed breaks, Torres testified that his "lead" told him he needed to have his radio with him "at all times" and that he needed "to answer it when I'm—when we are looking for you." Torres went so far as to claim he was written up for his failure to keep and respond to his radio at all times.[17] This creates a material issue of fact with respect to the break policy implemented for Torres.

Employers must both authorize and permit proper rest breaks, and a management policy to pressure employees not to take those breaks fails to meet this obligation. (See *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 963 [issue of fact existed despite lack of requirement to record breaks and collective bargaining agreement authorizing proper breaks where computer system did not include a code for rest breaks, drivers said they felt pressured not to take breaks and therefore claimed not to take them,

---

**17** This court recognizes the conflict in the evidence on this point, as it appears from the record that no formal write-up was found to substantiate this claim. However, the trial court is not to weigh the evidence at the summary judgment stage, and Torres has at least introduced evidence of a policy implemented by his direct lead that forced him to carry and respond to his radio at all times while working in the D2 facility, even if the claim is fairly thin.

and the defendant's management was aware some drivers were not taking breaks].) Given the claims by Torres, this is not a situation where Wonderful is being asked to police employee breaks to ensure employees do not voluntarily respond to calls, but rather is one where Wonderful has failed to provide the required duty-free break because its management informed an employee they were not free from all duties during their purported break times.

In summary, the trial court erred in granting summary judgment with respect to appellants' fourth cause of action. Both Zepeda and Torres identified a material issue of fact with respect to whether required meal breaks—that based on time entries were late, missed, or improperly rounded—had been authorized and permitted. Additionally, both identified a material issue of fact regarding the amount of time permitted for their meal breaks in the limited time period and situation in which PPE was required to be doffed after clocking out and donned prior to clocking back in. Further, while Zepeda failed to demonstrate a material issue of fact regarding whether he was properly offered required rest breaks, Torres did identify a material issue of fact regarding whether the policy implemented for him regarding the use of a company radio prevented duty-free breaks.

*Derivative Claims, Including PAGA*

In addition to the four primary claims considered by the trial court, appellants also included four claims considered by the trial court as derivatives of those main claims. These included a claim for unpaid wages and waiting time penalties (Lab. Code, §§ 201–203), one for failure to properly itemize paystubs (Lab. Code, § 226, subds. (a), (e)), one alleging a violation of California's Unfair Business Practices Act (Bus. & Prof. Code, § 17200 et seq.), and one for enforcement under PAGA (Lab. Code, § 2698 et seq.). As noted above, the trial court concluded that because summary judgment was proper on all claims, appellants' "derivative claims fail."

On appeal, both sides accept that the trial court's ruling is dependent upon finding it correctly granted summary judgment. Having concluded the trial court erred in

granting summary judgment, its determination that all derivative claims also fail cannot stand.

Appellants also argue, however, that Zepeda's PAGA claim should be treated differently under *Huff v. Securitas Services USA, Inc.* (2018) 23 Cal.App.5th 745, 750 because a PAGA plaintiff does not need to be aggrieved by a specific Labor Code violation before acting as a representative of other aggrieved employees on that claim. Wonderful responds that this issue was not raised below and therefore need not be considered on appeal. We agree.

We note, however, that our conclusion Zepeda's primary claims survive summary judgment on some theories but not on others is not intended to imply that appellants' PAGA claim, to the extent based on theories properly raised before the trial court, is subject to the same restrictions. We leave to the trial court in the first instance the question whether, upon a remand after finding appellants have brought a PAGA claim on at least one valid theory, appellants may pursue other theories properly dismissed on an individual summary judgment motion under *Huff*'s view that "PAGA allows an 'aggrieved employee'—a person affected by at least one Labor Code violation committed by an employer—to pursue penalties for all the Labor Code violations committed by that employer." (*Huff v. Securitas Services USA, Inc.*, *supra*, 23 Cal.App.5th at p. 751.)

*Evidentiary Issues*

Finally, we take up claims by appellants that the trial court improperly excluded evidence supporting their opposition to the summary judgment motions. Similar to the class certification motion, the trial court excluded evidence submitted by appellants in support of their opposition to the summary judgment motions. As noted above, the trial court's ruling granted Wonderful's relevance objections to several employee declarations and certain objections to attorney Downey's declaration.

As with the contested class certification evidence, this court has reviewed the submissions, objections, and ruling with respect to the contested summary judgment

motion. In this instance, again without recounting each piece of evidence specifically, the general types of evidence involved include declarations from former employees regarding their work experiences and training, internal e-mails from Wonderful discussing pay issues; and general collections of pay information generated by counsel and presented to the trial court in summary form.

At the outset, this court notes that it has reversed the summary judgment ruling with respect to most grounds potentially covered by the disputed evidence. In cases where the evidence relates to issues already resolved in appellants' favor, this court need go no further as appellant cannot show prejudice in the exclusion of such evidence. (See *In re Automobile Antitrust Cases I & II* (2016) 1 Cal.App.5th 127, 144 [reversal permitted only if identified error means a different result would have been possible].)

Thus, the relevant issues for which excluded evidence could prove prejudicial are the claim that Wonderful utilized an improper rounding policy and whether Zepeda was offered proper meal and rest breaks. In this court's discussion above, we noted that to survive the summary judgment motion on the rounding claim, appellants would need to point to evidence not just of rounding and subsequent minute underpayment, but of some basis for concluding a facially neutral rounding policy was being implemented in a biased manner. We noted with respect to Zepeda's claim the lack of evidence regarding how Zepeda's rest breaks were to be taken.

Upon review of the evidence excluded by the trial court, we are unable to identify improperly excluded evidence that would bear on these two issues. Appellants' arguments do not specify how any error on the trial court's part would affect these specific issues and therefore provide no guidance to this court on how any error could be prejudicial. Accordingly, as occurred with respect to the class certification motion, even if this court were to assume an error in excluding evidence, it would be unable to find a reasonable probability that such an error would have affected the decision. (See *Major v. R.J. Reynolds Tobacco Co.*, *supra*, 14 Cal.App.5th at p. 1202.)

## DISPOSITION

As set forth above, the order denying class certification is reversed with respect to the proposed class of employees subjected to time rounding of their meal breaks, and the matter is remanded to the trial court for further proceedings to determine whether class certification is appropriate. In all other respects the order is affirmed.

The order granting summary judgment against Zepeda and Torres is affirmed with respect to appellants' theory that Zepeda and Torres were generally underpaid due to an improper time-rounding policy and with respect to the theory that Zepeda was not provided with legally required rest breaks. In all other respects, the order is reversed, and the matter is remanded to the trial court for further proceedings.

Costs are awarded to appellants.


HILL, P. J.

WE CONCUR:


LEVY, J.


MEEHAN, J.

64.